# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| EDWARD ROGERS, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:19cv00277 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MELVIN DAVIS, <u>et al.</u>, | ) | By: Michael F. Urbanski |
|     Defendants. | ) | Chief United States District Judge |

Edward Rogers, Jr., a Virginia inmate proceeding <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants failed to protect him from an assault by another inmate and delayed subsequent medical treatment. Defendants filed motions to dismiss and the matter is ripe for disposition. After reviewing the pleadings, the court grants defendants' motions to dismiss.

## I.

Rogers alleges that on November 11, 2018, while housed at Green Rock Correctional Center ("Green Rock"), he was assaulted by another inmate for forty-five minutes without intervention by a correctional officer. As a result of the assault, Rogers suffered a fractured eye socket and loss of part of his ear. After the assault, Rogers was questioned by Green Rock staff for one hour and fifteen minutes before he was taken to a medical center for treatment. Rogers alleges that he was taken to a hospital for surgery two days after the assault and the doctor told him that he could have saved Rogers' ear if Rogers had been brought to the hospital sooner. Rogers states that he received twenty-two stiches in his ear and a titanium implant in his eye socket. Rogers complains that correctional officers failed to protect him from the assault and staff delayed his medical treatment for the injuries he sustained. Rogers brings this action against Warden

Davis, Major Northup, Captain Zawhorodny, Lieutenant Williams, Sergeant Hiatt, Dr. Wang, and nurses Harris, Ganey, and Cobbs.

In support of his complaint, Rogers submits institutional medical records which begin on the date of the assault. The records reflect that the medical department was called to Rogers' housing unit for a medical emergency and, upon arriving, met Rogers and Sgt. Hiatt leaving the building. Rogers reported to medical staff that he had cut his ear while shaving his head.[1] Medical records indicate that a "large portion" of his right ear had been "sliced off" and that his eye was swollen shut. Bandages and an ice pack were applied and Dr. Wang was called and apprised of the incident. Dr. Wang approved Rogers' transport to the Gretna Emergency Room, and Rogers' housing unit was locked down during an investigation of the incident. Staff at the Gretna Emergency Room notified Green Rock staff that Rogers had a fractured eye socket and that his ear could not be reattached, that they had given him two medications, and that they had scheduled an appointment for Rogers with a plastic surgeon in the morning. Rogers returned to Green Rock from the emergency room that night and the medical records note that his eye was swollen shut with bruising, an ice pack was given to him, his dressing on his eye socket was changed multiple times, and he did not complain of pain. That night, at almost midnight, Nurse Harris left a message for Dr. Wang to call Green Rock. Nurse Cobbs approved Rogers' offsite medical appointment in Lynchburg, scheduled for 8:00 am the next morning. During the night, Rogers' dressing on his eye was changed and Rogers indicated that he was beginning to experience pain and weakness. Rogers was given Tylenol. Early the next morning, Nurse Harris noted that Rogers' dressing on his ear was clean and dry, that he did not complain of pain, that he stated he was feeling better,

---

[1] The court notes that medical records subsequently identify his injuries as caused by an assault.

that his color was back to normal, and that his morning medications were given to him. Shortly after, Dr. Wang called Green Rock and was given an update. Dr. Wang prescribed Amoxicillin and Tylenol, and ordered that Rogers be sent to the plastic surgeon appointment that morning, as scheduled by the Gretna Emergency Room staff. Rogers was transported to the Lynchburg Hospital for his scheduled appointment. Green Rock's medical department was notified that Rogers would receive surgery the next day, on November 13, 2018. Rogers returned to Green Rock in the evening of November 13, 2018, and the medical department noted that he had bruising and swelling, twenty-two stitches in his ear, no signs or symptoms of infections, and he was given an ice pack. Dr. Wang was notified that Rogers had returned to Green Rock and of his current condition. The medical records continue through November 26, 2018; however, Rogers' claims about medical treatment only concern the time period between the assault and his surgery.[2]

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to

---

[2] The court notes that there is no indication in the medical records provided by Rogers that he had titanium implanted in his eye socket as a result of the assault, as he alleges in his complaint.

3

provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

**III.**

Rogers alleges that no correctional officer intervened while he was attacked by another inmate for forty-five minutes. To the extent Rogers is arguing that the defendants failed to protect him, his allegations against the named defendants fail to state a cognizable claim. An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014); see Farmer v. Brennan, 511 U.S. 825, 833-35 (1994). To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Farmer, 511 U.S. at 834. Rogers fails to adequately state a failure to protect claim against any of the named defendants with any specificity. Rogers does not allege that any of the defendants were present during the assault or even aware that it was occurring. He also does not allege that any of the defendants knew of a "pervasive and unreasonable risk to harm" to Rogers. See Orpiano v. Johnson, 632 F.2d. 1096, 1101 (4th Cir. 1980). Accordingly, the court concludes that Rogers has not stated a failure to protect claim against the named defendants and, thus will grant defendants' motions to dismiss this claim.[3]

**IV.**

Rogers alleges that staff delayed medical treatment for his injuries sustained during the assault. To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that an official was deliberately indifferent to a serious

---

[3] To the extent that Rogers alleges that correctional officers were not paying attention or not at their assigned posts, the court notes that Rogers does not make these allegations against any of the named defendants.

medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir. 1994); Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (U.S. 1994). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979), abrogated on other grounds by Neitzke v. Williams, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998); see also Farmer, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Militier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009); Estelle, 429 U.S. at 104 (deliberate indifference may manifest by "prison guards [] intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed."). In such cases, a plaintiff must show not only that his medical need was objectively serious, but also that the delay in providing medical care caused him to suffer "substantial harm." See Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz v. Prison Health Servs., Case No. 3:10cv90, 2011 U.S. Dist. LEXIS 88124, at *19, 2011 WL 3489661, at *6 (E.D. Va. 2011); see also Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

There are two potential delays described in Rogers' complaint. First, the one hour and fifteen minutes immediately after the assault stopped, during which he was questioned about the incident, before he was taken to the medical center. And, second, the two days the passed between the time of the assault and his surgery. As to the first delay, Rogers does not allege that any of the named defendants were responsible for the delay, that they were questioning him, or that they were even present during that time. As to the second delay, Rogers' complaint does not allege any action by any of the named defendants that resulted in this delay. However, from the medical records that Rogers attaches to his complaint, it is clear the Dr. Wang and the nurse defendants were involved in some way in his medical treatment following the assault. However, the medical records also show that Rogers received medical treatment from prison staff and outside doctors throughout the two days between the assault and the surgery. The medical records show that after Rogers reported to the medical unit, he was transported to a local emergency room where hospital staff assessed his injuries, provided treatment, determined that his ear could not be reattached, and scheduled an appointment with a plastic surgeon. Rogers returned to Green Rock that night and received medical treatment throughout the night. The next morning, he was transported to a local

hospital for his appointment with the plastic surgeon. Rogers remained at the hospital overnight and received surgery the next day. Rogers returned back to Green Rock after receiving the surgery. Based on Rogers' allegations and the medical records he submits with his complaint, the court cannot find that Rogers has adequately stated an Eighth Amendment claim against any of the named defendants concerning the medical treatment he received or any delays in receiving the medical treatment. Accordingly, the court will grant defendants' motions to dismiss as to this claim.

## VI.

For the foregoing reasons, defendants' motions to dismiss Rogers' complaint are granted. The court will allow Rogers thirty days to file an amended complaint.

**ENTER**: This 18th day of December, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge